In re PETER PAUL BOOK CO.

(District Court, W. D. New York. August 10, 1900.)

BANKRUPTCY—ALLOWANCE OF COMPENSATION TO ASSIGNEE.

Under Bankr. Act 1898, § 64b, subd. 1, no allowance can be made by a court of bankruptcy to an assignee under a general assignment for services rendered as custodian of the property prior to the filing of a petition in bankruptcy against the assignor, even though such services appear to have been for the benefit of the general creditors, and the rule is the same although the bankrupt is a corporation which could not, under the act, have filed a petition in voluntary bankruptcy; but under such section the court may make a reasonable allowance to the assignee for services rendered and disbursements made in preserving the estate subsequent to the filing of the petition.

In Bankruptcy.

Loran L. Lewis, Jr., for trustee.
Thomas E. Shields, in pro. per.

HAZEL, District Judge. This is a review of an order made by Referee Hotchkiss allowing Thomas E. Shields, the general assignee of the bankrupt under the New York statute, the sum of five dollars per day for his services as custodian, from the filing of the petition herein, in addition to certain disbursements. The general assignment of the Peter Paul Book Company to Shields was made on November 27, 1899. The petition in involuntary bankruptcy herein was filed on December 18, 1899. The corporation was adjudged a bankrupt on February 8, 1900. The trustee qualified and

took possession of the estate on February 20, 1900. The questions raised by the rulings of the referee are certified to the district judge for his opinion thereon.

The question of an allowance for services as an assignee, rendered in voluntary assignment, was frequently before the courts in bankruptcy under the act of 1867, and almost universally it was held that an allowance to an assignee should be refused. Assignees, it was said, took the assignment subject to the contingency of its being avoided by creditors. In Re Stubbs, 4 N. B. R. 476, Fed. Cas. No. 13,557, both compensation and expenses were refused to a voluntary assignee. In Burkholder v. Stump, 4 N. B. R. 597, Fed. Cas. No. 2,165, it was held that "the allowance to a voluntary assignee of his charges and expenses ought to be refused where it could not be so guarded as to prevent the injurious duplication of charges." In Re Lains, 16 N. B. R. 168, Fed. Cas. No. 7,989, and in McDonald v. Moore, 15 N. B. R. 26, Fed. Cas. No. 8,763, the disbursements only were allowed. Under the present act, in Re Pauly, 2 Am. Bankr. R. 336, compensation as custodian and disbursements were allowed. The rule has been established in former cases, and no doubt it is the law now, that, where an assignment made under the state law was executed with an intent to defraud creditors, the assignee stands in the position of particeps criminis, and no allowance for either disbursements or services will be allowed. The Peter Paul Book Company, corporation, by its act of general assignment for the benefit of its creditors committed an act of bankruptcy (section 3a, subsec. 4), for which it was adjudicated an involuntary bankrupt on the petition of creditors. Under the act of 1867, any business corporation might become a voluntary bankrupt. The right to become a voluntary bankrupt under the act of 1898 is expressly denied a corporation by the language of the bankruptcy act itself. It is contended by counsel for the assignee that the debtor was precluded from becoming a voluntary bankrupt; that under such circumstances the execution of a general assignment for the benefit of creditors would not be analogous to the Gutwillig Case, 34 C. C. A. 377, 92 Fed. 337; that it is clearly distinguishable from a case where the assignor is an individual, who may become a voluntary bankrupt, and therefore compensation should be allowed in this proceeding to the assignee as such. To so hold would be an invitation to insolvent corporations to make general assignments for the benefit of creditors in order to obtain allowances for favorite assignees, resulting in the duplication of charges. This has always been guarded against. It is the duty of persons seeking relief in the bankruptcy court to proceed in the least expensive way to obtain the benefits of the act. The Gutwillig Case, supra, lays down the doctrine that "a general assignment for the benefit of creditors is void as against the trustee appointed in the subsequent bankruptcy proceeding, or as against the creditors of such debtor," and that "such an assignment or disposition of property is in fraud of creditors, who have the right to invoke the protection of the bankruptcy act." And it is declared to be "a general principle of bankruptcy laws not only to administer the assets of insolvent debtors on the basis of equality, but to

secure that result by giving to the creditors, and not to the debtor, the selection of the person to be intrusted with the administration."

The question of compensation to a person for services which tended to preserve the assigned property, and which services were rendered for the benefit of general creditors, in the light of the controlling decision holding general assignments to be void, is important. Section 3, subsec. 5, points out a simple and none the less effective way in which a person may make his insolvency known. A "person," by section 1, subsec. 19, is defined to include a corporation. It may be done by "admitting in writing his inability to pay his debts, and his willingness to be adjudged a bankrupt on that ground." In re Marine Machine & Conveyor Co. (D. C.) 91 Fed. 630, 1 Am. Bankr. R. 421; In re Bates Machine Co. (D. C.) 91 Fed. 625, 1 Am. Bankr. R. 129. Compare In re Empire Metallic Bedstead Co. (D. C.) 95 Fed. 957, 2 Am. Bankr. R. 329. Such an admission by the president of the corporation, with the consent of the directors, doubtless would have speedily resulted in creditors filing an involuntary petition in the bankruptcy court, and at the same time in an application being made to take charge of and hold the property of the alleged bankrupt prior to adjudication, and pending a hearing on the petition. The petitioners making the application are required to give a bond with sureties, and by section 2, subsec. 3, of the bankruptcy act it is provided that receivers may be appointed to take charge of the property of the bankrupt after the filing of the petition, and until it is dismissed or the trustee has qualified. By section 2, subsec. 5, the court may authorize the business of the bankrupt to be conducted for limited periods by receivers, if necessary in the best interests of the estate. Had this course prevailed in the case at bar, the entire proceeding from the beginning would have been under the supervision of the bankruptcy court, and the legislative intent in regard to the administration of bankrupts' estates would then have been complied with. It manifestly was the intent of congress that the bankrupt's property should be administered in the courts of bankruptcy, and in the manner indicated by the act.

There is no authority in law for granting this allowance. Section 64b, subsec. 1, expressly prohibits it. In re Giblom, 2 Nat. Bankr. N. 60. The conclusion reached is that an allowance to an assignee under a general assignment for services rendered as custodian of the property prior to filing the petition in bankruptcy, even though it have the appearance of being rendered for the benefit of the general creditor, is not permitted by the bankruptcy act, and ought not be allowed. The bankruptcy court, however, is authorized to make an allowance for services rendered in preserving the estate subsequent to filing the petition. Section 64b, subd. 1. The referee has deemed it proper to make such an allowance. The amount allowed by him is $5 per day, or $320, and $135 for disbursements. The assignee had possession of the property from the time of filing the assignment to the time of accounting to the trustee in bankruptcy. The business of stationer and book publisher went on uninterruptedly, and at a profit. The assets are $18,000, and

the liabilities $55,000. The allowance of the referee is for 64 days, from the time of filing the petition in bankruptcy. The allowance is confirmed, in addition to $135 disbursements, and an order may be entered accordingly.